Mr. Fagan? It is Fagan, right? Yes, Your Honor. Thank you. Thank you. Thank you, Mr. Chief Justice, and may it please the Court. The Court of Appeals' practice of automatically granting appellate relief for every violation of Rule 11c1, irrespective of whether it prejudiced the defendant, is flawed. As this Court recognized in United States v. Vaughan, Rule 11h was adopted for the precise purpose of eliminating the defendant from the United States. It was the practice of ending the then-common practice of automatically reversing even for non-prejudicial Rule 11 errors. It would be especially inappropriate to apply an automatic reversal rule in a case like this one that comes to the appellate courts in a plain error posture. Erroneous judicial participation of the defendant in the lower courts is flawed. May I ask you a question about that? It's plain error because the defendant didn't make an objection in the lower courts. But the defendant doesn't know about Rule 11 and doesn't know about 11c that says a judge is not supposed to participate in plea bargaining. And his lawyer doesn't tell him the judge is doing something wrong because the lawyer wants him to plea. So he lacks the information necessary to make a prompt objection. So it seems a bit unfair to say that he's subjected to a plain error when he hasn't got a clue that the judge magistrate wasn't supposed to do what he did. Well, first of all, Your Honor, I respectfully disagree with the notion that just because Respondent's counsel was advising him to plead guilty, that Respondent's counsel had so abdicated his representation that he couldn't be expected to object to an error that the judge made. I would also point out that if the Court were to create an exception to the plain error doctrine, this would be a particularly inappropriate case in which to do it, because not only was there not a contemporaneous objection, there wasn't an objection before the district judge in the months of proceedings that followed. They didn't raise any claim of error on appeal until the court of appeals raised it. And in fact, in this case, Respondent did file a motion in the district court to withdraw his plea. And he didn't mention the magistrate's comments or any pressure he felt from those comments at all. Kennedy, Well, suppose you just stick with Justice Ginsburg's hypothetical, or perhaps not even a hypothetical, what happened in this case. Just assume that the defense attorney likes this judicial intervention and he wants this to take place. It seems quite unfair to talk about the plain error, because he doesn't tell the defendant is, as Justice Ginsburg says, what does the defendant know about Rule 11c? He doesn't know about it. Well, Your Honor, if Respondent wants to make an ineffective assistance of counsel claim on collateral review, he can make that. I'm not aware of any court of appeals that has abandoned the plain error doctrine in this kind of case. And I don't think there should be any sort of special exception that says when we assume when counsel is advising his client to plead guilty that we can't expect counsel to make objections to errors that occur based on the judge's comments. Ginsburg, This was the lawyer that had filed an Anders brief, so he didn't, even at that stage, the lawyer. I mean, the – I don't want to absorb your time beyond this, but I think the plain error is questionable when it seems that the judge, the lawyer, they're ranged against the defendant, and the defendant doesn't know that he has this right. Well, Your Honor, let me just say one other word about that. I don't think it's going to be easy for courts of appeals to tell exactly why the lawyer may not have made an objection. I just don't think it's fair to assume that in every Rule 11c1 case that the lawyer is effectively acting at contrary purposes to his client. I mean, lawyers advise clients to plead guilty all the time, and that doesn't mean that they've abandoned the representation to the point where you can't assume they're acting on the client's behalf and will raise objections. But our basic point in this case is that the client has made an objection. Sotomayor, it doesn't go to whether you should apply the prejudice problem, because either under normal harmless error or plain error, you have to get to whether it prejudiced someone. That's exactly right, Justice Sotomayor. That was exactly the next sentence that was going to come out of my mouth, is that our basic point in this case is that you have to apply prejudice analysis in some form, and whether it's harmless error or plain error, the court of appeals refuses to do it.  Sotomayor, I think one of the most powerful arguments of your adversary is that in the most common of situations, and it's how I read the advisory notes, it's going to be awfully difficult to say that a judge's intervention hasn't influenced a defendant. This is the unusual case where you might actually have a no prejudice argument because of the unique facts. But it – there is a purpose for keeping judges out of this, and that's because the subtle influence that judges exert is not so subtle. It's very palpable and does influence most decision-making, both by lawyers and defendants. So if that's the standard, why isn't it a rebuttable presumption that prejudice exists? Well, first of all, Your Honor, I want to take issue with the notion that all Rule 11c1 errors are alike. There's actually a variety of different kinds of Rule 11c1 errors. Rule 11c1 has been held to cover, for example, a judge pressuring the government outside the defendant's presence to offer a plea, a judge discouraging a plea, a judge commenting in a well-intentioned manner about the obvious difference in potential sentencing consequences between a potential plea agreement and a trial, or a judge having rejected one plea agreement that the parties reached, indicating a bit too strongly what kind of plea agreement the judge might accept. I think adopting some sort of one-size-fits-all rule would be inappropriate, and a rebuttable presumption, I think, would also be inappropriate for a few reasons. First of all, I don't think courts should have to distinguish between different types of errors to see whether rebuttable presumption should apply.  Sotomayor doesn't have to use the word rebuttable presumption, but there has to be a strong prejudice factor, whether rebuttable or not, assumed in a judge's intervention. I think that's already built into Rule 52 in a couple of different ways. First of all, Rule 52 places a presumption based on whether or not the defendant objected. If the defendant objected, the burden is on the government. If the defendant didn't object, the burden is on the defendant. But also, I don't – I want to be clear on this. The type of error – if there's a very serious error, the nature of the error and the error's seriousness would, of course, be a factor and a very important factor in the prejudice analysis. But as Your Honors recognize with this case, there may be other circumstances that indicate that the error did not, in this case, have a reasonable probability of affecting the decision. Breyer. That's the problem. Is there a way of doing this, which I don't see at the moment, but the judge intervenes in a serious way and says, you go listen to your lawyer and this is a very harsh penalty and, boy, you're in, da, da, da, okay? Serious problem. And now to track down whether that affected substantial rights, you have to try to track down the state of mind of the defendant and would he have pled guilty anyway. And that's sometimes quite difficult to do, very hard. But if you don't insist on doing it and you have an absolute rule of structural error or something, then you suddenly discover these minor things. The judge says, go to lunch, or, you know, some really trivial intervention and you're going to say that the guilty plea he can just void is guilty plea. So there should be a way of distinguishing the trivial from the really important in terms of how serious the intervention was. But I don't see any way to do that. Have you thought about that at all? Do we have to go all the one way or all the other way? I have thought about that a little bit, Your Honor. And I'd say that trying to break Rule 11c1 into different pieces and adopt different rules based on a different kind of error would be inappropriate for three main reasons. The first one is I think it would be inconsistent with this Court's approach in Nieder v. United States, which makes clear that in deciding whether an error is structural, you have to look at the entire class of errors. And Rule 11c1 defines the class of errors as cases in which a judge participates in plea negotiations in some way and it doesn't define subcategories. Second, I think breaking this up into pieces would essentially be an incomplete and unsatisfactory form of prejudice analysis. That is, reviewing courts would still be looking at errors and differentiating between them in order to decide whether relief is warranted, but they'd be narrowly focused only on the binary inquiry of how to categorize the error. They'd be disregarding how serious that particular error was versus other errors in that category, and they'd be disregarding all the other facts and circumstances the courts always look at and are well familiar with how to look at in a normal prejudice analysis to determine whether the error affected the outcome. Third, particularly because the subcategories don't exist in the rule and would be something of judicial invention, I think that approach would be inherently inadministrable, manipulable, and lead to inconsistent results. It could be very difficult to tell whether a particular type of error should fall into one category or another, and under the approach you're suggesting, which I think is the approach Respondent is advocating. I don't think Respondent is actually advocating the per se rule that the Eleventh Circuit adopted here. I think under that approach, you know, everything turns on a narrow question of categorization. I think the much better approach and the approach that Rule 52 adopts is to look at all the facts and circumstances to attempt to determine the effect on the outcome. Ginsburg. Ginsburg. Mr. Feigin, is there any situation in which a judge participating in a plea bargaining, any situation that would be prejudicial, that you recognize would be prejudicial, and if there is, can you describe what that would be? Feigin. Oh, certainly, Your Honor. We — the government loses many of these cases, even in circuits that have prejudice analysis. In fact, one example the Court might want to look to, there was a certiorari petition I think filed at the end of last term, Case 11-8966, Raboio and Dino, which was a case of Rule 11c1 error. The government conceded that even on plain error analysis that that was prejudicial. I can describe— Ginsburg. What makes it prejudicial and this not? Feigin. Well, let me take a different example. Fourth Circuit's decision in the United States against Bradley, the judge essentially told the defendants that he did — it boggled his mind that they were going to trial and kept essentially harassing them about why they were going to trial. And eventually they said, all right, Your Honor, we're going to plead guilty. I mean, that kind of thing obviously is going to be prejudicial. But the advantage of a prejudice approach is it allows you to separate that kind of case from kinds of cases when there are less serious errors, or even a case where there is a fairly serious error, and this case may fall within that category, but there are facts and circumstances that indicate that the error didn't have a reasonable probability of affecting the defendant's decision to plead. And while we're not asking the Court to resolve the prejudice analysis here in the first instance, we're just asking the Court to remand the case to the court of appeals to do that. I think it's just worth noting that a couple of the factors, one is that there was a three-month break between the magistrate judge's comments and the entry of the plea, and a month into that a speedy trial motion was filed, which indicated at least some intent at that point to go to trial. The plea and the sentencing occurred in front of the district judge, not the magistrate judge, to make the comments. Ginsburg. On that point, do we know — do we know if the district judge who did preside at the plea hearing knew about the episode with the magistrate three months earlier? I don't — I'm not aware of anything in the record that reflects whether he did or did not. There's never been an allegation that he said something about them or that he was aware of them or — The same for the prosecutor? Your Honor, my understanding is the government was not aware of this because it occurred in an ex parte hearing in which the government wasn't in attendance. The government wasn't aware of it until the Eleventh Circuit conducted its own review of the record and asked for further briefing on the issue. Suppose there's a case where the defendant would not have pled guilty without this Court saying something inappropriate, but it's a case where the defendant would be crazy to go to trial because the trial would lead to a much more severe sentence. Would there be prejudice there? Yes, Your Honor. He has a right to go to trial if he wants to go to trial, even if it would be crazy. So under that circumstance, if he wouldn't have, you know, pleaded guilty without the erroneous comments from the judge, there would be prejudice. Kennedy, what happens under — under the rule if the magistrate asks that the defendant be excused? I don't know quite how you do that. The defendant has to be — but can the — can the judge just have the attorneys before him and say, now, I want you to be very, very clear that this is a mandatory minimum that is — that we should try to avoid, if at all possible? Can he do that? Well, Your Honor, I think that's — It's awfully hard to have a hypothetical where you exclude the defendant. Well, Your Honor, it actually happened in a nonhypothetical fashion, a case we cite in our reply brief called In Re United States, in which the judge was apparently unhappy with the government's conduct in that case and had the prosecutor and defense counsel in chambers, or at least in court, without the defendant's parties, to reach a plea agreement. I think if something like that happened, Your Honor, there would be some question whether the defendant was made aware of it and whether it actually influenced the defendant's decision to plead. I don't think there can be presumption that just because counsel heard it that it necessarily would have. What if the judge sees what the judge thinks is ineffective assistance of counsel under our decision in Lafleur taking place? Is there anything that can be done? So, Your Honor, I think one of our main concerns in bringing this case before the Court is the interaction of this Court's decisions in Lafleur and Frye with Rule 11c1. And Frye suggests that one way a judge can try to guard against a later claim of ineffective assistance of counsel is to conduct a colloquy with the defendant — or not a colloquy, but a discussion with the defendant during the initial proceedings to try to establish that he understands the consequences of his plea and that he's receiving effective assistance of counsel. I think that could be done very carefully by asking very general questions. But I think it's very easy to see how a judge might slip up and say, oh, that's an interesting offer. Did you discuss that with your counsel? That seems like something you ought to discuss with your counsel. And I think what the automatic reversal rule the Court of Appeals has adopted is it really puts judges and, frankly, the government in kind of a box. On the one hand, judges have to guard against these later ineffective assistance of counsel claims by discussing plea discussions. And on the other hand, any slip-up in that discussion is going to lead to automatic reversal on appeal. Now, I just want to add one more thing, which is, I think, the best evidence that we have that this — the magistrate judge's comments here did not create a reasonable probability of affecting the defendant's decision to plead is, again, defendant himself moved pro se to withdraw his plea in the district court. And his reasons for withdrawing his plea, which start on page 58 of the Joint Appendix, never mention the magistrate's comments. Instead, in his own words, what he says is, Your Honor, my decision to enter the plea was a strategic decision. The reason being is that I knew that the prosecutor had a duty with the courts to disclose the information relevant for this court's determination of the acceptance or rejection of the plea. And what he means by that is that he took issue with some aspects of the allegations in the indictment, although he's quite clear, both in that proceeding and at his guilty plea proceeding, that he did commit the conspiracy offense. And he just believed that those allegations in the record would be cleaned up or have to be withdrawn by the prosecutor if he pleaded guilty. Now, he was wrong about that, but what we have in this case is a clear, unvarnished explanation by the defendant in his own words about why he pleaded that doesn't mention the magistrate's comments. The court of appeals erred in disregarding that, and if the Court has no further questions, I'll reserve the balance of my time. Roberts. Thank you, counsel. Mr. Yablon. Mr. Chief Justice, and may it please the Court. By imploring Anthony de Villa to forego his trial rights, confess his alleged crimes, and accept a plea deal, the magistrate judge abandoned his role as neutral arbiter and fundamentally distorted the pretrial process.  I didn't hear your first verb, by foregoing? By foregoing. By foregoing. His trial rights. The right at issue in this case is not one that should be subject to post hoc speculation. Judges, when an error of this kind occurs, you're creating a sugenerous structural error analysis. You're basically, because even with respect to constitutional violations that we have found structural error in, we've created the plain error rule that still requires a proof of prejudice. So you're asking us to create something that's really sugenerous and saying it's always a structural error. That's not correct, Your Honor. First, let's put to one side the fact that we do argue that we should not be in a plain error framework at all in this case because of the circumstances in which the judge's improper intervention. Assume I accept that argument. So this Court has. You're saying this is a structural error always. And this Court has, at the very least, strongly suggested that substantial rights when you're dealing with a structural error are affected per se. Where they've left the door open to some additional analysis is the fourth prong of the plain error standard, where the Court is called upon to consider whether the error affects the fairness, integrity, or public reputation of the proceedings. And the government has never in this case invoked that fourth prong. They've never claimed that the error here is one that does not affect the fairness, integrity, or public reputation. So when you're only dealing with the third prong of the plain error standard, does the error affect substantial rights? That language is the same in Rule 52b, the plain error standard, as it is in Rule 52a, affects substantial rights. And if it means in Rule 52a that this is the sort of error for which an individualized that carries over to Rule 52b. So I would not say that this is at all the kind of sui generis example that you're indicating. And I do want to try to show that this error is quite similar, both to constitutional and nonconstitutional violations, in which this Court has said that an error should be said to affect substantial rights without the sort of specific showing of prejudice that the government is demanding. When you have a judge that, as in this case, is stepping out of his proper role, is acting contrary to his duties to guard against ill-considered and involuntary waivers of the defendant's basic trial rights, is actually ratcheting up the already tremendous pressure on the defendant to plead guilty, that is a systematic distortion of the process that is not unlike the kind of error that occurs when a defendant is denied an impartial adjudicator, is not unlike the kind of error that occurs when a defendant is denied counsel or is forced to. Roberts What if you have a situation where the judge is conveying purely factual information? There's a plea bargain on the table for one year, and the judge says, you should know that I have these cases a lot. The last ten cases that went to trial where the defendant was found guilty, I sentenced them to a minimum of 12 years. Pure facts, the facts might have the effect of pushing the defendant one way or another, but it's also factual information of which he ought to be aware. That's right, Your Honor, and this raises a question about what the scope of the participation prohibition actually is. And we're in a strange posture in this case, because the government has conceded that we're dealing with a conceded plain violation of the rule, and yet their analysis, instead of proceeding from that violation, it goes out to the periphery and tries to figure out where are the boundaries of Rule 11. Now, and they cite some appellate cases that arguably have applied too broad a construction of the rule and have reversed where maybe there was just a one-off comment or a purely informational comment. But it's not clear that that is actually what the text of Rule 11 forbids, particularly when you consider the context of the rule and its underlying purposes. So in this case, it's not clear. Roberts, we do need to have a good sense of how far your per se structural argument is going to reach before we decide, in deciding whether it's appropriate or not. That's right, Your Honor, and there are two ways to break it down. One is we do argue that the remedy that we seek should apply for all cases of judicial participation. And the question then is are judicial participation violations as expansive a category as the government suggests that they are? Our second argument is that Well, on that, what's the most minor thing that the government could do that would still count as a Rule 11c1 violation? The most minor thing that the government could do or a judge could do? That the judge could do. I'm sorry. Well, the most minor we think that Rule 11 is concerned with judicial pressure to plead guilty. And so the most, I mean, a judge might make a comment that, viewed from the transcript, would suggest that the evidence against the defendant is overwhelming or that the defendant would get a much lower sentence if he pleads guilty than if he goes to trial. Those we think are What about the hypothetical that I posed? So that hypothetical, if we're talking about a purely informational statement like that, then actually we don't think that that is likely to be a violation of Rule 11c1. And the reason is, if you look at 11b, the rule expects that judges are, in fact, going to be offering a lot of advice to defendants before the defendant pleads guilty. And so if a judge is making the kinds of comments that Rule 11b is contemplating, informing the defendant about the nature of the charges against him, attempting to make sure that the defendant understands that his trial right is a real one, telling the defendant a little bit about what, in fact, the sentencing exposure might be if he is convicted, those purely informational statements, we don't think is what is meant to be prohibited by Rule 11c1. Roberts If it's my example and he says this is what I've done in the past 10 times, so you ought to think long and hard about whether the bargain for 1 year is a good deal. And this is getting, and then the judge may well be crossing the line. What the judge, what is It's kind of a fine line to draw, isn't it? There's no question that there will be close cases. I would say that if you look to the majority of cases that are actually out there, most judges, of course, are very scrupulous about following the rule. And when a judge is not, the judge is not usually being circumspect about it. The judge is trying to get a message across to the defendant. And so there may be difficult line-drawing cases, and that's true whether you're looking at the remedial approach that we're asking for or the remedial approach that the government is asking for. Ginsburg Mr. Hamlin, the case that you're presenting would be quite strong if the same judge the magistrate judge also presided at the plea hearing. But here we have two factors that are special in this case. One is it's a different judge, and two is we have the interval of some 3 months in between. And then we have a plea hearing that looks to me like it's exemplary. The district judge did go through everything that Rule 11 calls for. So it is a different case, isn't it, when we have a plea hearing with a judge who is exerting no pressure at all, has nothing to do with encouraging the defendant to plead, but there was an earlier episode where a magistrate judge did overbear. And at no point during the plea colloquy hearing is the district judge in any way acknowledging or disavowing the magistrate judge's comments, which we submit there is at least a very strong probability that those comments affected the defendant's thinking and are the reason that the defendant is at the Rule 11 hearing. Ginsburg But the judge did ask, do you recognize that your conduct satisfied the elements of the conspiracy? And the defendant answered yes. And the judge asked, has anyone pressured you to plead guilty? And he answers no. So. And, of course, in that situation, the defendant is likely not thinking about pressure that may come from the judiciary itself, and also not to nitpick. But when he's asking that pressure question, he's asking whether anyone pressured him to plead guilty today, which may not cause the defendant to think back on why he actually started down the negotiation road. And I think an important Sotomayor Mr. Yablon, I agree with you totally. I'm not as much convinced by the delay in pleading, because defendants often think about it, and I can imagine a hypothetical where the lawyer comes in and says, I told him to plead guilty and he said to me, I don't want to, but the judge told me to. So I don't think the time limit, we don't know if that happened. But what did happen is that the defendant made a motion to withdraw his plea, and he directly said, I entered the plea because I strategically decided that the government would eventually have to come forth and vacate the charges against me. He said it himself, with no pressure by a lawyer, because he was making the motion. How do you get past that statement? That statement reveals just how little confidence we actually should have in the plea decision that he made. Here is a defendant who, for the better part of a year, was adamant about his desire to go to trial and exercise his rights. It is the reason that the in-camera hearing happened in the first place, because he was unhappy that his lawyer just wanted him to plead guilty. After that hearing, suddenly there are plea negotiations and a plea deal, which it's clear that he is never happy about from the start. Even at the plea hearing, he's attempting to tell the judge, look, I don't think that my conduct actually is consistent with the conspiracy charge as alleged. And he says later on at the sentencing hearing, when they are discussing the withdrawal motion, that basically he went forward because his lawyer was instructing him that it was the right thing to do. And if you look at that sentencing hearing, that's the whole point, which is, this may be IAC, but I don't know how it – how you prove that what the magistrate judge said to him led to his decision. And we don't need to prove that.  Sotomayor, that's only if we don't accept that prejudice is a consideration here. Well, either way, if you were looking at whether this conduct should be viewed as inherently prejudicial, the reason that you might do that is because you think that in all of these cases there is at least going to be a reasonable probability that it would affect where the defendant is. And here you have a defendant who has been adamant that he's not going to plead. And when you have the judge making these comments in front of the defendant, having him lose confidence in his right to go to trial, then it's likely that that is shifting the defendant's mindset in a way that gets him to the negotiating table, and it also reaffirms the defense lawyer's position in this case. And so you have a defense lawyer who may then go back to the prosecutor and say, we're just going to get this deal done, and it may not be the deal that the defendant would otherwise have reached. Breyer, you want us to basically not apply the 11-H with the harmless error business, and you basically want to prevent bizarre results by making a tough definition of the word participate. That's how I understand you. And maybe you're right, but it sounds to me as you say it in reading the briefs that this is really a job for the Rules Committee. I mean, this is a rule. We don't normally have structural errors in respect to rules. We have Rules Committees there to listen to this kind of complaint, to weigh it in the system as a whole, and to come up with better rules. Let me address that in two ways, because we have two separate arguments, and I want to try to keep them distinct. One is that if you look at the text and history of Rule 11, there is strong evidence that Congress actually made an affirmative judgment not to sweep in Rule 11 violations within the scope of Rule 11-H. Our second argument is that even if Rule 11-H applies to all Rule 11 errors, that all Rule 11-H does is apply the same substantial rights language that you see in Rule 52a and b. And this Court has recognized that while that substantial rights language is often synonymous with a case-specific prejudice inquiry, that's not always true.  For instance, the Court is familiar with the constitutional cases in which the Court has said that an error is structural without trying to make a case-specific determination of prejudice. But there are a number of nonconstitutional cases as well in which the Court has said that an individualized prejudice inquiry is simply inappropriate, that the error affects substantial rights by its nature. So one example that I think is fairly close to the one we have here is Gomez v. United States, addressing a statutory provision that prevents magistrate judges from conducting the jury voir dire. And that provision is violated, and the Court is asked to conduct a prejudice analysis. Did it matter that the magistrate judge conducted voir dire? And the Court said, we're not going to go there. This is – this is, in effect, a structural defect in the proceedings. Kagan. Kagan. But, Mr. Yevlin, have we ever said that about the violation of a rule of criminal procedure, that it's structural error no matter what the circumstances? So, first, Justice Sotomayor, this Court has said that rules of criminal – I'm so sorry. First time that's happened. You work for her, too, I think. Makes it that much more embarrassing. She used to sit over there. This Court has said that Federal rules and statutes stand on equal footing. So whether we're talking about applying this with respect to a rule or a statute, it shouldn't make a difference. The analysis should be the same. And, in fact, there is at least one case where the Court did apply, in effect, a structural analysis to a rule violation, and a second case in which the Court at least left open the possibility. So the case in which the Court did so is the McCarthy case, which is discussed extensively in the briefs. And the Court referred to the 1966 version of Rule 11 and said that prejudice adheres in a violation of that rule, and that it was not going to conduct an individualized prejudice analysis. It was simply going to grant relief where there had not been full compliance with that provision. Now, of course, the rule has been amended since then, but that provides evidence that the Court is not unwilling to adopt this kind of rule in the context of the Federal rule. Kagan. Kagan. I would think, Mr. Yablon, that one of the effects of doing what you're asking us to do is that the rule will just get narrower and narrower. In other words, if automatic reversal is always the effect of finding a violation, then I think you acknowledge this in a way, that people will just find fewer and fewer violations. And I'm wondering why we should do something like that, rather than interpret the rule as it was meant to be interpreted, but then say, you know, somebody can look and say, it really just didn't matter that it was violated in this case. So we think that our approach is consistent with how the rule is, in fact, meant to be interpreted. The rule really is about this problem of placing judicial pressure on defendants to plead guilty, and those are the cases that ought to be reversed. But the Court has a line-drawing decision to make either way. Either the line that the Court should focus on is the line that separates participation  And I want to get to this point that Alitoso, you are arguing for a narrower interpretation of Rule 11c1 than a number of courts of appeals have adopted. Isn't that correct? There are – I believe there are some decisions out there that have adopted probably a broader construction than we think is necessary and appropriate. But, you know, what is easier for reviewing courts to monitor? Is it easier for them to monitor the narrowing, the improper narrowing of the rule over time, or is it easier for them to monitor improper applications of the Harmless Error Rule, especially applications of it that are happening in this kind of setting, where it's going to be almost inherently a very speculative analysis, an attempt to read the defendant's mind and ascertain whether the defendant was influenced by what the judge was saying? And it would be much easier for appellate courts to focus on the line-drawing exercise that determines whether or not a violation had occurred, or if you think that the rule is broader, whether the kind of violation that occurred in this case occurred, than it would be to try to make these case-by-case, scouring-the-record, individualized prejudice determinations. Alitoso, could you say something about Mr. Fagan's comments regarding what a judge can and cannot do if the judge thinks that he or she sees a violation of Lafleur and Frye taking place? So there ought to be things that a judge is able to do in that situation. Suppose, for example, that the judge becomes aware that the defense attorney has given the his client false information about the elements of the charge. It would not violate Rule 11c1 for the judge to say, I understand that you were told that the elements of the charge are A, B, and C, but in fact, they are X, Y, and Z. So there are certainly steps that a judge can take to help root out the violation. And I would say that, you know, the fact is that generally, when it comes to ineffective assistance counsel claims, there is only so much that the trial court can do. So the fact that the trial court may not be able to solve or prevent every ineffective assistance claim in this context is not necessarily an argument against the rule, because the judge often is not aware of the privileged communications. Now, just as a result of pretrial motions, that the evidence in the case is very, very strong. Let's say there's been a motion to suppress extremely incriminating evidence, and the motion has been denied. So the judge knows this is going to come in, and the judge thinks if this comes in, there's virtually very little chance that the defendant is going to be acquitted. And yet the defendant and the judge knows that a plea offer was made, and the defendant initially was going to take it, and then before it was accepted, it's rejected. Is there anything the judge can do in that situation, or just sit back and, you know, wait for the case to be reversed? Well, the judge's role in that situation is not to step in as defense counsel or, in effect, a second prosecutor. The judge – I think that there may be ways in that case for the judge to try to alleviate the error without crossing the line. But when you start to make exceptions in that situation, you go down the road of the judge being the one who is evaluating the evidence and who is, in effect, potentially presuming the defendant's guilt. And the judge can't do that. Alito, do you realize that I denied your motion to suppress that wiretap? And do you recognize that on that wiretap, you conceded that the loss in this case is $20 million? And do you know that under the sentencing guidelines, the sentence where the loss is $20 million is whatever it is, 10 years in jail? If the judge says all of that, has the judge violated Rule 11c1? I mean, if this is happening in the context of active discussions of whether the defendant should or should not take a plea, then that may well cross the line. Kennedy, I don't know when it can happen because there's no colloquy when there's a guilty plea. The colloquy happens when there's a not-guilty plea. I think, isn't it the opposite, Justice Kennedy? The colloquy happens after the defendant. You're correct. You're correct. So take – so in that instance, again, you have a situation that may not be different from situations that arise in completely different contexts, where the attorney is doing something that's ineffective, for example, and the judge just doesn't know about it. And whether or not that can be cured in this setting of plea discussions is just a little bit tangential, I think, to the key issue. Roberts, you've answered a lot of these questions by saying, well, it's hard to draw the line, and, you know, maybe in that case, maybe in this case. Most of our precedents where we recognize structural error and plain error are ones that are pretty easily categorized. Did a magistrate conduct voir dire or did he not? You know right away, one way or the other. Here, did he participate enough? You know, well, if he told them how many times he sentenced people this way, it's not. But if he said you ought to pay attention to what I'm telling you when you consider whether to plea or not, well, then it is. It seems to me in the typical plain error cases, we're very — the categories are very sharply defined. That's actually not accurate. I would say, for example, take the defendant's right to self-representation. There may be obvious cases, and when the defendant's right to self-representation has been clearly denied. But there are going to be line-drawing problems when you're trying to figure out, did standby counsel intervene so much that he denied that right? Or similarly with the public trial, obviously, a court can be totally closed, but then there are going to be difficult cases when you have to decide whether the justifications for closing the court were correct. Roberts, I would say in both of those examples, the gray area, if you were, is really quite narrow than here, where almost every time you've been asked a question about a difficult hypothetical, you say, well, maybe, maybe not. And I think that's quite different than saying is the court closed or not, or was the person, you know, did he represent himself in fact or not. And those just strike me as much easier cases. And, of course, I'm being asked all of the difficult hypotheticals. If you look at the cases that actually rise in practice. Yeah, but if you were arguing whether or not it's categorical error when the magistrate conducts voir dire, it would be pretty hard for somebody to come up with a tough hypothetical. In that instance, yes, but there certainly are instances in which the structural – in which the court has found structural error, even when there will be difficult line-drawing problems. Ginsburg. Mr. Yablon, one problem with calling this a structural error is that it's not so clear that this is a bad thing. That is, some States even today allow a judge to participate in plea bargaining. And the advisers, the Rules Advisory Committee, said when it framed this rule that some commentators had said it was quite a frequent thing that happened, that judges participated. So it isn't like not having a public trial or not giving a person counsel of choice. It's – this was something that still some jurisdictions think it's okay. Your Honor, no jurisdiction endorses judicial exhortations to plead guilty. And so this Court can resolve the case just on that narrower basis, that there is a category of cases that clearly do involve direct judicial pressure, and no State allows it, and those are clear violations of the rule. So without needing to draw these other lines about how broad participation may reach, the Court can do that. But even in those States, it's important to note that the Federal system has made a different structural choice. So whether or not it may violate the Constitution for States to have carefully tailored procedures that allow some type of judicial involvement, that's not the structure that the Federal system has chosen. And when you're dealing with the structural choice that was made in Rule 11, that judges shall not, must not participate in plea discussions, that that is as elemental to the Federal system of plea bargaining that we have, as many of the familiar elements of the trial are. And so the fact that States have made different structural choices does not mean that it's not a structural error here. Now, I do want to get back to this line-drawing issue, because I think that this is not something that should trouble the Court too much for a couple of reasons. First, in most cases, the line will not be that hard to draw when you consider the purpose of Rule 11c1, which is reducing judicial pressure and instances in which judges are stepping out of their role as impartial adjudicators. And when reviewing courts take that as the touchstone, there may be difficult cases, but they're going to be able to resolve most of them. Now, if the Court feels like it may be difficult to do line-drawing and it is uncomfortable extending the rule, the remedy that we're seeking that far, it is entirely appropriate for the Court to take out a subcategory of Rule 11c1 violations. Kagan But that seems a bit odd. Don't you think, Mr. Yablon, you know, saying, well, there are core violations as opposed to non-core violations? I mean, presumably, that's part of what the Court would think about when it was doing prejudice analysis. It would factor into the prejudice analysis that the Court undertakes, but it also is a reason just to draw the line. I mean, this Court in various instances has indicated that, I mean, there are some broad rules out there, the right to the assistance of counsel. It comes in different shapes, and the prejudice analysis that applies for a total denial of the right to counsel is different from the one that applies when you're dealing with mere deficiency in counsel's performance. And there is — and again, this is a comparative line-drawing problem. Either you draw the line looking at what a violation is or looking at what a judicial exhortation is from the statement that is made, or you engage in this freewheeling speculation that the government wants engaged in, where you are trying to read the defendant's mind, and that is simply not how harmless error analysis normally proceeds, where you have a closed universe of a record, you have specific criteria that are being applied, and you can posit what a reasonable juror is. There is no reasonable defendant that can be posited in the same way, because most defendants are idiosyncratic and are entitled to be idiosyncratic. Kagan Mr. Jablok, do you know of any case where there is one of these core violations, these exhortation cases, where the Court did not find prejudice? Jablok The answer is no, and that would be — and we would urge the Court that if it does not accept our primary submission, that it make clear that judicial exhortations like this are highly unlikely to be harmless. That is what the Fourth Circuit has done, the Fifth Circuit, the Seventh Circuit, the Tenth Circuit, the D.C. Circuit. They are, in effect, applying a per se analysis. They are just not calling it that. They are reversing in all of these cases. And so if this Court is uncomfortable calling it a per se rule, at least it should give very strong indications that comments like this cannot be written off, that they are highly likely, given the position of the judge relative to the defendant, to affect the defendant's thinking, to affect the way that the defense counsel approaches the case, and possibly the prosecution as well in those cases in which the prosecution is aware of the error. And we would go further and say that if the Court were to go down this road, it would be useful for the Court to provide the additional guidance of holding that this particular error was not harmless. That would send a signal to the lower courts that this conduct is clearly off limits, and it would give them an indication that the Court means what it's saying, that these kind of comments where a judge is exhorting a defendant to come to the cross, that he needs to plead guilty, that it would be helpful. Roberts, and if we're giving this guidance, what do we say about the fact that he had a different judge subsequent to this, that he filed a speedy trial motion after this coercion, which suggests that he wasn't coerced all that much? Are we supposed to take all that into consideration, too? You should say that those inferences are not adequate to overcome the inference that you draw from this type of participation, particularly here. I mean, consider the change in judge. The reason this hearing occurred before the magistrate judge is because the defendant sent a letter to the district court asking, explaining his problems with his counsel. He got a response from the magistrate judge. So in the defendant's mind, the magistrate judge and the district court are effectively one and the same, and you would not want a system where district courts are encouraged to send these issues to magistrate judges, so magistrate judges can engage in these kind of comments, but then the district court judge can basically just cleanse it. It is going to affect the way that the process plays out. Now, the speedy trial issue, if I may just, we can equally draw the inference that that was only done because counsel wanted to put some pressure on the government to actually reach a deal, and it is that kind of speculation that makes this error ill-suited to the kind of remedial analysis the government favors. Roberts. Thank you, counsel. Mr. Feigin, 13 minutes. Feigin. Thank you, Mr. Chief Justice. I just want to make one quick point in response to the notion that we are asking for some form of new prejudice analysis here. This is the exact same prejudice analysis from Dominguez-Benitez that looks whether there is a reasonable probability that the error affected the plea. Unless the Court has any further questions, I will rest. Kagan, can I ask you the same question that I asked Mr. Yablon? Do you know of any cases where in these – where there are really core violations, where a judge exhorts the defendant to plead? Does the Court ever find that non-prejudicial? Feigin. I am aware of one or two State cases in which the Court has looked at the passage of time as a reason why that kind of error wouldn't have been prejudicial. But otherwise, I agree with the Respondent that in the Federal courts of appeals that does tend to get reversed. And I think that supports the idea that if the Court adopts the normal prejudice approach and reaffirms that approach in this case, that there's actually a – Sotomayor, do you disagree with the State prejudice analysis, but one that says that it's highly unlikely that you're not going to find prejudice? Do you disagree with their analysis and approach? Well, Your Honor, there might – I'm not going to go so far as to endorse the result they've reached in every single case, but I think insofar as they approach the matter that, you know, if there's a fairly serious error and the defendant pleads guilty right after that, that that's very likely, absent some extenuating circumstances, to be prejudicial, we don't have a problem with that, unless there are further questions. Thank you very much. Thank you, counsel. Counsel. The case is submitted.